# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CRIMINAL ACTION NO. 3:13CR-00173-JHM

UNITED STATES OF AMERICA                                      PLAINTIFF

V.

GEORGE KUDMANI                                               DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the issue of restitution and forfeiture. The parties submitted supplemental briefs on this matter. [DN 295, DN 304, DN 306]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

On June 7, 2016, the United States charged Defendant, George Kudmani, in a Second Superseding Indictment with 19 counts of unlawful distribution of controlled substances, two counts of health care fraud resulting in the death of a patient, seven counts of health care fraud for unlawful billing of transvaginal ultrasounds, and one count of money laundering. On January 26, 2017, the jury found Kudmani guilty of 19 counts of unlawful distribution of controlled substances pursuant to 21 U.S.C. § 841 and seven counts of health care fraud pursuant to 18 U.S.C. § 1347. The jury returned not guilty verdicts on the remaining counts.

Following the jury's verdict, Defendant filed a motion to set aside the guilty verdicts and enter a judgment of acquittal. The Court denied the motion. The Court conducted a sentencing hearing on June 5, 2017. After addressing various objections and issues related to the sentencing, the Court sentenced Defendant to 48 months in prison. [Sentencing Hearing, DN 293.] The United States also requested the Court order Defendant to forfeit $428,800 and pay $97,324.30 in restitution. The Court deferred its decision on the amount of forfeiture and

restitution pending supplemental briefing by the parties.

## II. DISCUSSION

### A. Forfeiture

The criminal-forfeiture statute provides that an individual convicted of a drug offense "punishable by imprisonment for more than one year shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation." 21 U.S.C. § 853(a)(1); United States v. Darji, 609 Fed Appx. 320, 331–32 (6th Cir. 2015). The Court "must construe § 853 liberally in order to effectuate its remedial purpose." Darji, 609 Fed. Appx. at 332 (citing 21 U.S.C. § 853(o)). "Criminal forfeiture is considered to be punishment and therefore is part of the sentencing process." United States v. Smith, 770 F.3d 628, 637 (7th Cir. 2014)(citing Libretti v. United States, 516 U.S. 29, 39 (1995)). "The Government therefore has the ultimate burden of establishing the forfeitures by a preponderance of the evidence." Id.

In its original Sentencing Memorandum, the United States requested the Court order Defendant to forfeit: (a) $393,750 representing the alleged illegal proceeds from the distribution of the controlled substances between January 2009 to September 2012 and (b) $35,050 representing the cash seized at Defendant's residence and cash used by Defendant to purchase a vehicle. At the hearing, the Court declined to order forfeiture in the amount requested by the United States. The Government's calculation of Defendant's alleged gains related to the uncharged, unlawful distribution of oxycodone and hydrocodone is overly speculative. The evidence presented is insufficient to accurately calculate a forfeiture award with respect to proceeds from the uncharged prescription sales by Kudmani from 2009 to 2012.

At the Court's direction, the United States tendered alternative forfeiture calculations. According to the United States, calculation of every controlled substance (hydrocodone or

oxycodone) prescription for all listed patients in the Second Superseding Indictment during the indictment period demonstrates that Kudmani earned $8,785 ($35.00 multiplied by 251 prescriptions) from unlawfully distributing controlled substances to those specific patients. Similarly, the record further reflects that officers seized $20,050 in Kudmani's closet and that Kudmani purchased a 2012 Honda Accord with $15,000 in cash and a $5,971.63 check.

Defendant objects to these calculations. First, Defendant maintains that the patients referred to in Counts 4 and 6 did not pay Kudmani for writing their prescriptions. Defendant contends that a review of KASPER for these two patients shows that they received 82 relevant prescriptions, thus reducing the total amount of illegal proceeds by $2,870. The United States does not refute this statement. However, from the Court's review of the original sentencing memorandum and the exhibits tendered therewith, the Court can only find 30 prescriptions of Endocet (oxycodone) prescribed to CR (Count 4) and 21 prescriptions of Endocet prescribed to JH (Count 6) that were included in the Government's revised forfeiture amount. Therefore, the Court will reduce the amount of forfeiture by $1,785 ($35.00 multiplied by 51 prescriptions). Defendant shall forfeit $7,000 representing the amount earned from unlawfully distributing controlled substances to the specific patients listed in Counts 1-19 of the Second Superseding Indictment.

Second, Defendant objects to forfeiture of $5,971, which was the amount paid by check for the Honda. The United States offers no basis for forfeiting the amount paid from a family checking account for the Honda Accord. Defendant shall forfeit the cash seized from the residence and the cash utilized to purchase the Honda Accord in the amount of $35,050.

Accordingly, the Court finds that forfeiture of $42,050 by Defendant is appropriate.

## B. Restitution

The Mandatory Victim Restitution Act ("MVRA") requires the "district court to 'order

restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.'" United States v. Bogart, 576 F.3d 565, 573 (6th Cir. 2009)(quoting 18 U.S.C. § 3664(f)(1)(A)). "The term 'victim' is defined as 'a person directly and proximately harmed by a defendant's offense.'" United States v. Hunt, 521 F.3d 636, 648 (6th Cir. 2008)(quoting 18 U.S.C. § 3663A(a)(2)). "When determining the amount of loss for sentencing purposes, 'a defendant will be held accountable for the actual or intended loss to a victim, whichever is greater, or a combination thereof.'" United States v. Martinez, 588 F.3d 301, 326 (6th Cir. 2009). The United States has the burden of demonstrating the amount of restitution by a preponderance of the evidence. United States v. Davis, 2015 WL 2154245, at *2 (E.D. Ky. May 7, 2015)(citing 18 U.S.C. § 3664(e)).

### 1. Transvaginal Ultrasounds

Defendant argues that the amount of loss and restitution owed to Medicaid for falsely billing medically unnecessary transvaginal ultrasounds ("TVUs") should be calculated at $555.73 because that was the loss corresponding to the seven specific counts of conviction. (Response at 1.) Defendant maintains that it is wild speculation to assert that all of the ultrasounds performed during that period by Kudmani were "medically unnecessary," and such a calculation does not have sufficient indicia of reliability to support its probable accuracy. (Id. at 2.) The United States disagrees arguing that the Sixth Circuit has specifically upheld the calculation of restitution based on relevant offense conduct where, as here, the alleged fraudulent transactions were charged as part of any underlying scheme. The United States relies upon United States v. Martinez, 588 F.3d 301 (6th Cir. 2009) in support of its position.

In United States v. Martinez, the Sixth Circuit addressed the issue of whether restitution loss amounts should be limited to the exact charges on the indictment or be extended to cover

relevant conduct. Martinez, 588 F.3d at 326. The Sixth Circuit held that "[b]ecause the charges referred not only to the specific charges in the indictment, but also to the entire scheme underlying the fraud, the total intended loss connected to the wire and mail fraud was properly included, resulting in an actual loss of more than $12,337,230 for payments actually made to Martinez and an intended loss of $60,799,000 for bills submitted by Martinez." Id. Further, the Sixth Circuit noted that "it is appropriate for the court to consider the nature of the fraud in determining whether the loss amount should be limited to the specific losses testified to or to an amount derived from the nature of the fraud." Id.

Here, Defendant was convicted on all the TVUs health care fraud counts charged in the indictment, and each of those charges referenced an underlying scheme to defraud pursuant to 18 U.S.C. § 1347. The evidence reflects that a written report is required for every TVU billing, Defendant was aware of the requirement, and expert testimony revealed that the ultrasounds in the patient files analyzed were unnecessary and lacked the requisite reports. The record reflects that between January of 2009 and September 2012 the Kentucky Medicaid program paid Defendant $77,384.92 for the TVUs performed and Humana paid $12,770.23 to Defendant for the TVUs performed. Additionally, FBI Agent Jennifer Ratterman testified that she examined 75 of Defendant's patient files and did not observe any TVUs reports. Dr. Geri Hewitt also testified that she examined 58 patient files, found no reports in those files, and determined that a majority of the TVUs were not medically necessary. Accordingly, because the charges referred not only to the specific charges in the indictment, but also to the entire scheme underlying the fraud, the total amount of restitution owed to Passport and Humana because of the fraudulent scheme is $90,155.15.

**2. Costs Associated with the Death of T.K.**

The MVRA defines a victim as "a person directly and proximately harmed as a result of

the commission of an offense for which restitution may be ordered" and includes "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern" of criminal activity. 18 U.S.C. § 3663A(a)(2). The statute also specifically authorizes payment to a deceased victim's estate. Id.

The United States argues that restitution of the costs associated with the death of T.K. in the amount of $7,169.15 is appropriate. The United States maintains that it is inconsequential that Kudmani was acquitted of the health care fraud death involving T.K. According to the United States, the record demonstrates by a preponderance of the evidence that Defendant illegally distributed prescription drugs to T.K., the drugs were the proximate cause of T.K.'s death, and the loss as a result of her death is $7,169.15. In support of its argument, the United States cites United States v. Nossan, 647 F.3d 822, 828 (8th Cir. 2011). In Nossan, the defendant pled guilty for distribution of heroin and at sentencing, the district court granted an upward departure and imposed restitution for funeral expenses finding that the heroin distributed by the defendant caused an individual's death.

The Sixth Circuit recognizes that restitution calculations need not be limited only to convicted offenses. United States v. Churn, 800 F.3d 768, 782 (6th Cir. 2015.) Further, a defendant may be ordered to "pay restitution for both his convicted and acquitted conduct." United States v. Jones, 641 F.3d 706, 715 (6th Cir. 2011). In the present case, the jury acquitted Defendant on the Health Care Fraud charges related to the prescriptions. In fact, upon a review of the verdict form, it is clear that the jury did not even decide whether it believed that T.K.'s death would not have occurred but for the controlled substances that were prescribed by the Defendant. Here, Kudmani prescribed Oxycodone and Clonazepam to T.K. Dr. Barbara Weakley-Jones, the Jefferson County Coroner, testified that the combination of the benzodiazepines and oxycodone caused her death. (Trial Transcript, DN 292 at 151.)

Accordingly, the record demonstrates by a preponderance of the evidence that the drugs prescribed to T.K. by Defendant caused her death. Thus, the Court will award restitution in the amount of $7,169.15 for the costs associated with the death of T.K.

### III. CONCLUSION

For the reasons discussed above and at the sentencing hearing, **IT IS HEREBY ORDERED** that Defendant, George Kudmani, shall forfeit $42,050.

**IT IS FURTHER ORDERED** that Defendant, George Kudmani, shall pay restitution in the amount of $77,384.92 to Passport, $12,770.23 to Humana, and $7,169.15 to the family of T.K.

cc: counsel of record